## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN BATISTE, JR**., | ) | |
| | ) | **Case No. 1:10−cv−03437** |
| Plaintiff, | ) | |
| | ) | **Honorable Robert M. Dow Jr.** |
| v. | ) | |
| | ) | |
| **COUNTY OF COOK**, a Municipal Corporation; | ) | |
| **THOMAS J. DART**, in his official capacity as | ) | **PLAINTIFF DEMANDS TRIAL** |
| Sheriff of Cook County, Illinois; **SALVADOR** | ) | **BY JURY** |
| **GODINEZ**, in his official capacity as Director of | ) | |
| the Cook County Jail; **DAVID FAGUS**, in his | ) | |
| official capacity as Director of Cermak Health | ) | |
| Services; **CYNTHIA JONES**, in her individual | ) | |
| and official capacity; **MARILYN A.** | ) | |
| **PENNINGTON**, in her individual and official | ) | |
| capacity; **JACQUELINE JACK**, in her | ) | |
| individual and official capacity; **STEVEN** | ) | |
| **McNUTT**, in his individual and official capacity; | ) | |
| **DR. AVERY HART**, in his official capacity; and | ) | |
| other unknown members of the Cook County Jail, | ) | |
| Cermak Health Services of Cook County and | ) | |
| Cook County Department of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |

## FIFTH AMENDED COMPLAINT

Plaintiff JOHN BATISTE, JR., by and through his appointed counsel, John F. O'Brien III and Williams Montgomery & John, Ltd., for his Fifth Amended Complaint hereby states as follows:

## NATURE OF ACTION

1. This is a civil action brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, based on violations of the Eighth and Fourteenth Amendments to the Constitution of the United States. This action arises from the cruel and unusual punishment Plaintiff JOHN BATISTE, JR. endured as a result of Defendants' deliberate indifference to his serious medical condition and severe pain.

## JURISDICTION

2.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 because it is a civil action presenting a federal question and arising under the Eighth and Fourteenth Amendments to the Constitution of the United States seeking to recover damages for injury resulting from the deprivation of rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

3.      This Court also has pendent jurisdiction over this action pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred at the Cook County Jail ("CCJ"), a division of the Cook County Department of Corrections ("CCDOC"), Cermak Health Services of Cook County ("Cermak"), and J.H Stroger, Jr. Hospital of Cook County ("Stroger").  CCJ, CCDOC, Cermak, and Stroger are all located in Chicago, Illinois, which is in the Northern District of Illinois.

## THE PARTIES

5.      Plaintiff John Batiste, Jr. ("BATISTE") is a citizen of the United States and a resident of Illinois.  BATISTE is a pre-trial detainee currently housed at the CCJ, a division of the CCDOC, located in Chicago, Illinois, Inmate No. 2010-0114135.

6.      At all relevant times, Defendant Nurse Cynthia Jones ("JONES") was and is a licensed physician assistant/nurse practitioner employed by Cook County Health Services ("CCHS") at Cermak, which provides on-site health services to pre-trial detainees of the CCJ. JONES provided BATISTE with medical care and treatment in the course and scope of her

employment, and under color of Illinois law, based on her position as a physician assistant/nurse practitioner at Cermak.

7. At all relevant times, Defendant Nurse Marilyn A. Pennington ("PENNINGTON") was and is a licensed physician assistant/nurse practitioner employed by CCHS at Cermak, which provides on-site health services to pre-trial detainees of the CCJ. PENNINGTON provided BATISTE with medical care and treatment in the course and scope of her employment, and under color of Illinois law, based on her position as a physician assistant/nurse practitioner at Cermak.

8. At all relevant times, Defendant Jacqueline "Jackie" Jack ("JACK") was and is a licensed physician assistant/nurse practitioner employed by CCHS at Cermak, which provides on-site health services to pre-trial detainees of the CCJ. JACK provided BATISTE with medical care and treatment in the course and scope of her employment, and under color of Illinois law, based on her position as a physician assistant/nurse practitioner at Cermak.

9. At all relevant times, Defendant Mr. Steven McNutt ("McNUTT") was and is a Correctional Officer at the CCJ. He was directly responsible for making sure that pre-trial detainees in the custody of the CCJ and CCDOC who are in need of medical care are given access to prompt medical treatment and/or are transported to a medical facility. McNUTT supervised BATISTE during his pre-trial detention at the CCJ in the course and scope of his employment, and under color of Illinois law, based on his position as a Correctional Officer at the CCJ.

10. Defendant Mr. Salvador A. Godinez ("GODINEZ") was and is the Director of the CCDOC, and as such, confers with the Director of Cermak and/or the Sheriff of Cook County, Illinois in formulating policy. GODINEZ is also the commanding officer of Defendant McNUTT. In his official capacity as Director of the CCDOC, GODINEZ is responsible for

formulating and supervising the policies, customs, and regulations of the CCDOC to ensure that individuals delivered to his custody are provided with prompt medical treatment.

11.     At all relevant times, Defendant Sheriff Thomas J. Dart ("DART") was and is the Sheriff of Cook County, Illinois.  As such, DART is the commanding officer of Defendants GODINEZ and McNUTT. DART, in his official capacity, was and is responsible for the establishment and supervision of policies, customs and practices governing the employment, training, supervision and conduct of, the officers and employees of the CCJ and the CCDOC, including the CCJ's and CCDOC's correctional officers, to ensure that individuals delivered into his custody are provided with prompt medical treatment.

12.     At all relevant times, Defendant Mr. David Fagus ("FAGUS") was and is the Director of Cermak, and as such, he is responsible for the day to day functioning of Cermak, including the medical treatment of the pre-trial detainees at the CCJ.  FAGUS is also responsible for the establishment and supervision of policies, customs and practices governing the employment, training, supervision and conduct of, the employees of Cermak and confers with the Director of the CCDOC and/or the Sheriff of Cook County, Illinois in formulating such policies.

13.     Fagus, in his official capacity, is one of the individuals ultimately responsible for the day to day operations of Cermak.  These duties and responsibilities include, among other things:

     (a)    Implementing policies to ensure that the pre-trial detainees receive prompt medical treatment while detained in the CCJ;

     (b)    Implementing policies to ensure that grievances or complaints lodged by pre-trial detainees at the CCJ, including those related to medical problems are acted upon;

     (c)    Implementing policies to ensure the reasonable safety of pre-trial detainees at the CCJ;

(d)     Implementing policies to ensure that officers and employees do not inflict physical or emotional abuse on pre-trial detainees at the CCJ and that they ensure that pre-trial detainees with medical needs receive prompt medical attention;

(e)     Providing competent medical personnel; and

(f)     Providing adequate training for deputy sheriffs, guards and/or medical staff in identifying, treating and responding to medical complaints and needs of the pre-trial detainees at the CCJ.

14.     At all relevant times, Defendant Dr. Avery Hart ("HART") was and is a licensed medical physician employed by the CCHS as the Medical Director of Cermak, and as such, he is responsible for the day to day operations of Cermak, which includes policy making and the implementation of FAGUS's, GODINEZ's, and/or DART's policies and directives.  HART is also the person directly responsible for clinical supervision of all licensed practical nurses, including PENNINGTON, JONES, and JACK.

15.     HART, in his official capacity, is one of the individuals ultimately responsible for the day to day operations of Cermak, which is a division of the CCJ. These duties and responsibilities include, among other things:

(a)     Implementing policies to ensure that the pre-trial detainees at the CCJ receive prompt medical treatment while detained in the CCJ;

(b)     Implementing policies to ensure that grievances or complaints lodged by the pre-trial detainees at the CCJ including those related to medical problems are acted upon;

(c)     Implementing policies to ensure the reasonable safety of the pre-trial detainees at the CCJ of the CCJ;

(d)     Implementing policies to ensure that officers and employees do not inflict physical or emotional abuse on the pre-trial detainees at the CCJ and that they ensure that detainees with medical needs receive prompt medical attention;

(e)     Providing competent medical personnel; and

      (f)    Providing adequate training for deputy sheriffs, guards and/or medical staff in identifying, treating and responding to medical complaints and needs of the pre-trial detainees at the CCJ.

16.    Pursuant to Illinois Supreme Court decision in *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003), Defendant COUNTY OF COOK, is a necessary party to this suit.

17.    Defendant COUNTY OF COOK employs JONES, PENNINGTON, JACK, McNUTT, DART, GODINEZ, FAGUS, HART, and other unknown employees of the CCJ, CCDOC, CCHS and Cermak.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

18.    BATISTE suffers from a congenital disease called Protein-C deficiency, which causes abnormal blood clotting. BATISTE was diagnosed with Protein-C deficiency on or about 1997.

19.    Prior to his pre-trial detention at the CCJ, BATISTE was receiving medical treatment for his Protein-C deficiency. BATISTE had been prescribed and administered various therapeutic drugs, including, but not limited to, COUMADIN® (also known as Warfarin Sodium) to help prevent against his increased tendency for thrombosis (blood clots) due to this Protein-C deficiency.

20.    BATSITE was arrested and processed by the CCDOC on January 13, 2010 while at Jackson Park Hospital, 7531 South Stony Island Avenue, Chicago, Illinois 60649. BATISTE was assigned a Cook County Jail Identification Number 2010-0114135.

21.    On January 15, 2010, BATISTE was discharged from Jackson Park Hospital and transferred to the CCJ.

22.    While detained at CCJ, BATSISTE received medical treatment for his Protein-C deficiency at Cermak and Stroger.

23.     The physicians and/or licensed physician assistants/nurse practitioners at Cermak facilitated and monitored BATISTE's Protein-C deficiency treatment.

24.     On February 2, 2010, BATISTE saw Dr. Ronald F. Ledvora, of Cermak, for treatment.  During this examination, BATISTE was informed that his blood levels were non-therapeutic as a result of his Protein-C deficiency.

25.     On February 2, 2010, Dr. Robert F. Ledvora prescribed 8 mg of COUMADIN® and 75 units of LOVENOX® (also known as Enoxaparin).  These medications were administered by JONES and PENNINGTON, who were scheduled to the CCJ, Division 10 1-D.  The 8 mg of COUMADIN® was to be administered daily to BATISTE for one month.  The 75 units of LOVENOX® were to be administered to BATISTE two times a day for a three-day period.

26.     BATISTE was given his first dosage of LOVENOX® on February 4, 2010.

27.     Shortly after being administered his first dosage of LOVENOX®, BATISTE began to experience extreme and excruciating pain in his right thigh (femur) area.

28.     On the evening of February 4, 2010, BATISTE complained to PENNINGTON and JONES, who were responsible for administering BATISTE's medication, of his extreme and excruciating pain and suffering, but he was disregarded and treated with deliberate indifference by JONES and PENNINGTON.

29.     JONES and PENNINGTON told BATISTE that they "would get to him" and that they "would call him" to address his pain and suffering.  Neither JONES nor PENNINGTON ever contacted BATISTE on February 4, 2010.

30.     On February 5, 2010, having heard nothing from JONES or PENNINGTON, BATISTE went to the Diabetic call, where he again complained of his extreme and excruciating pain and suffering to JACK.  BATISTE was disregarded and treated with deliberate indifference by JACK.  JACK told him that "he was just getting old."

31.     As the pain became even more unbearable, BATISTE waited again for JONES and PENNINGTON to return on February 5, 2010.

32.     During this time, BATISTE also complained to his cellmate that he was experiencing extreme and excruciating pain.

33.     During this time, BATISTE also complained to McNUTT that he was experiencing extreme and excruciating pain.

34.     Despite complaining of extreme and excruciating pain for more than 48 hours, and despite BATISTE's repeated requests for medication to relieve extreme and excruciating pain, JONES, PENNINGTON, JACK and McNUTT treated BATISTE with deliberate indifference and left his pain untreated, and allowed his serious medical condition to remain untreated likely contributing to his hematoma injury.

35.     It was not until approximately 11:30 p.m. on February 6, 2010 – nearly three days after BATISTE first complained of experiencing extreme and excruciating pain – that McNUTT sent BATISTE for medical treatment because BATISTE was unable to get out of bed in his cell. When BATISTE was sent for medical treatment, his pain was so excruciating, that he was unable to walk and required to wheelchair to be transported from his cell to Cermak.

36.     While at Cermak, BATISTE was still given nothing for his pain, despite BATISTE's repeated requests.

37.     BATISTE was then transferred to Stroger, where he was diagnosed with a blood clot and hematoma injury to his right thigh (femur).  Again, BATISTE still was not administered any pain medication.

38.     BATISTE was then transferred back to Cermak, where again he was not given any pain medication despite BATISTE's repeated requests.

39.     Finally, on February 7, 2010 – approximately five (5) days after first complaining of extreme and excruciating pain, BATISTE was given morphine to ease his pain.

40.     BATISTE remained hospitalized for his blood clot and hematoma injury at Stroger until February 19, 2011, when he was discharged and transferred back to the CCJ. When BATISTE left Stroger on February 19, 2011, he required a walker to assist him with his mobility.

41.     Although BATISTE was prescribed physical therapy by the physician at Stroger to help him regain full mobility of his right leg, CCJ has not been providing him with access to such therapy.

42.     As a result of Defendants' deliberate indifference and refusal to provide BATISTE with prompt and timely medical treatment, BATISTE suffered extreme and excruciating pain from on or about February 2, 2010 through February 19, 2010 and also suffered a serious hematoma injury.

43.     Numerous pre-trial detainees other than BATISTE have also filed complaints and grievances alleging that they were denied prompt medical care for medical needs requiring immediate medical treatment.

44.     It is a policy, custom or practice of DART and/or GODINEZ to obstruct, discourage, prevent or interfere with medical care to pre-trial detainees in need of immediate medical treatment. It is DART's and/or GODINEZ's policy regarding the deputy sheriffs assigned to guard the CCJ Medical Unit to "cross-watch" several tiers simultaneously. This is a well known security risk. In addition, it obstructs, prevents and interferes with the deputy sheriffs' abilities to detect signs and symptoms of medical emergencies. It further prevents the deputy sheriffs from administering first aid, following procedures of obtaining emergency medical care and transferring patients to appropriate medical facilities or health care providers.

DART and/or GODINEZ are aware of the fact that deputy sheriffs assigned to guard the CCJ Medical Unit are normally the first staff members to receive complaints of medical problems from the pre-trial detainees. DART and/or GODINEZ provide said employees the discretion whether to contact the medical staff after receiving a medical complaint.

45. It is the policy, custom or practice of FAGUS and/or HART to obstruct, discourage, prevent or interfere with medical care to pre-trial detainees in need of immediate medical treatment. Both FAGUS and HART are aware of the fact that the nurses assigned to the CCJ Medical Unit do not maintain medical records on individual pre-trial detainees, do not view medical records or practice basic nursing techniques. Nurses do not familiarize themselves with a pre-trial detainee's medical condition nor do they practice any type of follow-up or continuing care. Moreover, nurses are not required no take histories of pre-trial detainees or document changes in their conditions or reactions or responses to treatment or medications. In fact, the nurses do not have access to a pre-trial detainee's medical records. Moreover, FAGUS and/or HART are aware of the fact that the nurses at the CCJ Medical Unit do not perform most of the duties promulgated in their job descriptions. It is the policy, custom or practice of FAGUS and/or HART to merely allow nurses assigned to the CCJ Medical Unit to dispense medication and take vital signs. Nurses are not allowed to employ basic nursing discretion or make basic nursing diagnoses pursuant to said policies, customs or practices.

46. Further, it is the policy of FAGUS and/or HART to make pre-trial detainees wait to fill out a "yellow sheet," place it into a box and wait long periods of time to be screened by a nurse in order to even see a doctor. FAGUS and/or HART follow these customs, practices and policies of denying immediate medical treatment at the CCJ that is persistent and widespread, despite being aware of these problems. In fact, in 2007 Cook County settled a wrongful death law suit based on the actions of certain nurses, including JACK, where similar allegations were

alleged. These problems have also been documented in detail by the July 11, 2008 findings of the investigation conducted by the U.S. Department of Justice, Civil Rights Division and the United States Attorney's Office.

## CAUSES OF ACTION

## COUNT I

### Deprivation of Civil Rights under Color of State Law
### in Violation of 42 U.S.C. § 1983 - Against All Defendants

1.     BATISTE realleges and incorporates by reference the allegations contained in Paragraphs 1 through 46 above.

2.     The Eighth Amendment to the United States Constitution forbids cruel and unusual punishment. The Eighth Amendment prohibits deliberate indifference to serious medical needs of prisoners. 42 U.S.C. § 1983 provides a remedy for constitutional violations where the violations are committed under color of State law.

3.     Defendants violated BATISTE's right to be free from cruel and unusual punishment by failing to provide him with adequate and timely medical treatment, and by failing to properly test, diagnose, treat and remediate BATISTE's medical condition and pain when he experienced a serious and obvious medical emergency.

4.     As a direct and proximate result of Defendants' failure to provide BATISTE with adequate and timely medical treatment, BATISTE has suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, and reasonable and necessary medical, hospital, and other expenses.

5.     No employee, agent or servant of DART, GODINEZ, FAGUS and/or HART provided medical care to BATISTE because of a policy, custom or regulation of DART, GODINEZ, FAGUS and/or HART, which denied pre-trial detainees access to immediate medical treatment. Nurses employed at the CCJ Medical Unit are not required to familiarize

themselves with pre-trial detainees' medical histories, act on medical complaints requiring immediate treatment or follow basic nursing practices. Moreover, it is DART's, GODINEZ's, FAGUS's and/or HART's policy, custom and practice to limit nurses to dispensing medication. The policy, custom or regulation of DART, GODINEZ, FAGUS and/or HART did not require Deputy Cook County Sheriff's, Correctional Officers, or nurses to make competent medical treatment immediately accessible to pre-trial detainees in need of emergency medical care. Instead, pre-trial detainees must wait for long periods of time for access to medical treatment even when they are in need of immediate care. The policy, procedure, custom or regulation fails to include a system for identifying or diagnosing pre-trial detainees who need immediate care, monitoring their condition, and responding to their complaints in a reasonable fashion, even when immediate care is required.

6.    This is true even where a pre-trial detainee with Protein-C deficiency such as BATISTE, repeatedly complains of extreme and excruciating pain and of an inability to walk.

7.    In the alternative, despite the policy, custom or regulations of DART, GODINEZ, FAGUS and/or HART to make medical treatment immediately accessible to pre-trail detainees in need of emergency treatment the acts of JONES, PENNINGTON, JACK, and/or McNUTT failed to respond to Plaintiff's constant medical complaints and needs over a period of more than four days, as described above. These acts were done maliciously, wilfully and wantonly, intentionally, and/or with reckless disregard and gross negligence or gross recklessness and/or deliberate indifference towards BATISTE's rights under the Eighth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. Section 1983. BATISTE repeatedly told JONES, PENNINGTON, JACK, and/or McNUTT that he was experiencing excruciating pain. Moreover, BATISTE displayed physical manifestations of his illness, in that he could not walk and was groaning in pain. In addition, JONES, PENNINGTON, JACK, and/or McNUTT had

been informed of the fact that BATISTE had a rare medical condition requiring careful monitoring and treatment. However, no matter how often BATISTE pleaded for help, he was told to be quiet, that there was nothing wrong with him, or that he "was just getting old." At no time was BATISTE ever sent or an examination or given any type of treatment at a facility equipped to handle his type of illness. Instead, JONES, PENNINGTON, JACK, and/or McNUTT ignored him even while his symptoms became increasingly severe, ultimately resulting in a hematoma injury.

WHEREFORE, Plaintiff respectfully requests a trial by jury and further requests:

(a)     A declaration that BATISTE has been deprived by Defendants of his right to be free from cruel and unusual punishment in violation and contravention of the Eighth Amendment to the United States Constitution;

(b)     An award of attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law;

(c)     An award of punitive damages for violation of the Eighth Amendment of the United States Constitution, 42 U.S.C. § 1983;

(d)     An award of all damages allowed by law, including compensatory damages for violation of the Eighth Amendment of the United States Constitution, 42 U.S.C. § 1983, and that this Court award pre-judgment and post-judgment interest at the lawful rate; and

(e)     Any additional or alternative relief as may be just, proper, and equitable.

## COUNT II

### Pendant State Claims

### Negligence – Willful and Wanton – Against Defendants
### DART, GODINEZ, JONES, PENNINGTON, JACK and McNUTT

8.     BATISTE realleges and incorporates by reference the allegations contained in Paragraphs 1 through 46 above.

9. At all times relevant, there existed an Illinois statute, 55 ILCS 5/3- 6016, which states that a sheriff shall be vicariously liable for the negligent acts of his deputies.

10. Defendants had a duty to ensure that persons in their custody who are in need of immediate medical treatment receive prompt medical care and to be free from willful and wanton conduct.

11. At the aforesaid time and place, DART, GODINEZ, JONES, PENNINGTON, JACK, and McNUTT were willful and wanton and breached their duty in one or more of the following respects:

> (a) With an utter indifference and conscious disregard for safety, knowingly failed to provide medical treatment to BATISTE for more than four days despite his repeated complaints of illness, pain, and inability to walk;

> (b) With an utter indifference and conscious disregard for safety, knowingly failed to provide medical treatment in violation of 725 ILCS 5/103-2 where BATISTE repeatedly complained of illness, pain, and inability to walk;

> (c) With an utter indifference and conscious disregard for safety, knowingly failed to provide access to competent medical personnel despite being informed by BATISTE and his physicians that he had a Protein-C deficiency;

> (d) With an utter indifference and conscious disregard for safety, knowingly failed to implement procedures whereby pre-trial detainees in their custody in need of immediate medical care can be promptly given immediate access to medical treatment;

> (e) With an utter indifference and conscious disregard for safety, knowingly failed to transport BATISTE to a hospital or medical facility despite his repeated complaints of illness, pain, and inability to walk;

> (f) With an utter indifference and conscious disregard for safety, knowingly failed to provide adequate training or procedures for deputy sheriffs, guards and/or medical staff to follow in identifying signs and symptoms of a medical emergency, responding to medical complaints and providing or obtaining access to emergency medical care;

> (g) With an utter indifference and conscious disregard for safety, knowingly failed to follow Cook County Sheriff Department policies regarding providing timely medical care and treatment to pre-trial detainees;

(h)     With an utter indifference and conscious disregard for safety, knowingly employed a course of action by which employees ignored the medical needs of pre-trial detainees including BATISTE's despite knowledge of his specific medical conditions and needs;

(i)     With an utter indifference and conscious disregard for safety, knowingly employed policies, customs and practices that denied immediate medical treatment to pre-trial detainees in need of immediate medical treatment; and

(j)     With an utter indifference and conscious disregard for safety, knowingly failed to obtain timely and adequate medical help for BATISTE.

12.     As a direct and proximate result of Defendants' failure to provide BATISTE with adequate and timely medical treatment, BATISTE has suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, and reasonable and necessary medical, hospital, and other expenses.

WHEREFORE, Plaintiff respectfully requests a trial by jury and further requests:

(a)     Judgment against defendants DART, GODINEZ, JONES, PENNINGTON, JACK, and McNUTT, and each of them, for damages in an amount in excess of $30,000;

(b)     An award of attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law; and

(c)     Any additional or alternative relief as may be just, proper, and equitable.

Dated: April 29, 2011                           Respectfully submitted,

                                                **JOHN BATISTE, JR.**


                                        By:     /s/ John F. O'Brien III

John F. O'Brien III (Bar I.D. 6290370)
WILLIAMS MONTGOMERY & JOHN LTD.
233 South Wacker Drive
Suite 6100
Chicago, Illinois  60606
Telephone:  (312) 443-3200

Facsimile:  (312) 630-8500
E-Mail: jfo@willmont.com

*Counsel for Plaintiff*
28823.P019CU/mw/Doc#947497

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that in accordance with Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF), Plaintiff's **FIFTH AMENDED COMPLAINT** was served electronically pursuant to the District Court's CM/ECF filing system to the below-named individuals on this 29th day of April, 2011.

>    Shandra Lynn Leary
>    James C. Pullos
>    Cook County State's Attorney's Office
>    50 West Washington Street
>    500 Daley Center
>    Chicago, IL  60602
>    *Counsel for Defendant Thomas J. Dart*


>    Kevin William Frey
>    Cook County State's Attorney's Office
>    69 West Washington Street
>    Chicago, IL  60602
>    *Counsel for Defendants Dr. Avery Hart, Cynthia Jones, and*
>    *Marilyn A. Pennington*


/s/ John F. O'Brien III