### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN BATISTE, JR.**, | ) | |
| | ) | **Case No. 1:10–cv–03437** |
| Plaintiff, | ) | |
| | ) | **Honorable Robert M. Dow Jr.** |
| v. | ) | |
| | ) | |
| **COUNTY OF COOK**, a Municipal Corporation; | ) | |
| **THOMAS J. DART**, in his official capacity as | ) | |
| Sheriff of Cook County, Illinois; **CYNTHIA** | ) | |
| **JONES**, in her individual and official capacity; | ) | |
| **MARILYN A. PENNINGTON**, in her | ) | |
| individual and official capacity; **JACQUELINE** | ) | |
| **JACK**, in her individual and official capacity; | ) | |
| **STEVEN McNUTT**, in his individual and | ) | |
| official capacity; **DR. AVERY HART**, in his | ) | |
| official capacity; and other unknown members of | ) | |
| the Cook County Jail, Cermak Health Services of | ) | |
| Cook County and Cook County Department of | ) | |
| Corrections, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

In response to Defendants' Motions to Dismiss Count II of Plaintiff's Fifth Amended Complaint (Dkts. 78, 79, 82), Plaintiff John Batiste, Jr. ("Batiste"), hereby states:

### ISSUE PRESENTED

Whether Batiste's pendent state law claim set forth in Count II of his Fifth Amended Complaint should be dismissed because it is barred by the Local Governmental and Governmental Employees Tort Immunity Act's ("Tort Immunity Act") applicable one-year statute of limitations?

### INTRODUCTION

Batiste's Fifth Amended Complaint seeks to recover damages for Defendants' violations of the Eighth and Fourteenth Amendments to the Constitution of the United States pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. (Dkt. 69). Plaintiff also seeks to recover for

Defendants Dart's, McNutt's, Jones's, Pennington's, and Jack's negligence and willful and wanton failure to provide him with humane treatment and adequate and prompt medical care as 725 ILCS 5/103-2(c) requires.

<u>Procedural Background</u>

Batiste filed his Original Complaint on June 4, 2010. (Dkt. 1). Batiste filed his First Amended Complaint less than one week later, on June 10, 2010. (Dkt. 2). Batiste filed his Second Amended Complaint on July 15, 2010. (Dkt. 11). Batiste filed his Third and Fourth Amended Complaints on July 30, 2010 and October 14, 2010, respectively. (Dkts. 12, 14, 16, 18, 27). There are no substantive differences between these complaints.

On June 4, 2010, Batiste filed a Motion for Appointment of Counsel (Dkt. 4). The Court denied Batiste's motion on June 15, 2010. (Dkt. 7). On January 20, 2011, the Court reconsidered its prior ruling, and appointed Attorney O'Brien as counsel for Plaintiff in accordance with counsel's trial bar obligations under Local Rule 83.37. (Dkt. 53). Atty. O'Brien was required to file an appearance, meet with Batiste, and confer with Defendants' counsel prior to February 23, 2011. On February 10, 2011, Atty. O'Brien filed an Agreed Motion to Extend the Court's Deadlines as set forth in the January 20, 2011 minute entry. (Dkt. 63). This motion was granted on February 14, 2011, and Atty. O'Brien was granted until March 29, 2011 to file his appearance, confer with Plaintiff Batiste, and confer with Defendants' counsel. Atty. O'Brien filed his appearance on March 9, 2011, and subsequently met with Batiste and conferred with Defendants' counsel. On April 29, 2011, with the assistance of his newly appointed counsel, Batiste filed his Fifth Amended Complaint, adding a pendent state claim.

<u>Factual Allegations</u>

Batiste is a pre-trial detainee housed at the Cook County Jail. Batiste suffers from a congenital disease called Protein-C deficiency. (Fifth Am. Compl., ¶ 18). While in Defendants' custody, Batiste was seen by Cermak medical personnel, was treated, and received medication for his Protein-C deficiency. (*Id.* at ¶¶ 23-25). Batiste was given his first dose of medication on February 4, 2010. (*Id.* at ¶ 26). Shortly after receiving this medication, Batiste began to experience severe and extreme pain in his right thigh/femur area, and on the evening of February 4, 2010, he complained to Nurses Pennington and Jones, but was disregarded. (*Id.* at ¶¶ 27-29). The following day, Batiste complained of his extreme pain to Nurse Jack, and again, was disregarded. (*Id.* at ¶¶ 30, 31) While waiting for the nurses to return, Batiste complained of his pain to Defendant McNutt, who is employed as a correctional officer at the Cook County Jail. (*Id.* at ¶¶ 19, 33).

Over the course of the next few days, Batiste made repeated requests for pain treatment to Nurses Pennington, Jones, and Jack, as well as Officer McNutt, but all of Batiste's pleas were ignored. (*Id.* at ¶ 34).

Finally, on February 6, 2010 – nearly three days after first complaining of his pain – Defendant McNutt sent Batiste for medical treatment after seeing that he was unable to get out of his bed in his cell. (*Id.* at ¶ 35). By the time Officer McNutt finally responded to Batiste's pain, Batiste had to be wheeled out of the Jail to the hospital. (*Id.* at ¶ 35). Batiste spent the next two weeks at the hospital, where he eventually received treatment for his pain. (*Id.* at ¶¶ 35-39). While at the hospital, Batiste was diagnosed with a blood clot and hematoma injury, and was prescribed physical therapy to regain mobility to his leg. *Id.* at ¶¶ 37, 40-41). Although the hospital prescribed him continued physical therapy after his discharge, the Jail did not provide Batiste with access to the physical therapy. (*Id.* at ¶ 41).

As a result of Defendants' deliberate indifference and refusal to provide Batiste with humane treatment, including prompt and timely medical treatment, Batiste suffered from extreme pain from February 2, 2010 through February 19, 2010. (*Id.* at ¶ 42).

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007). The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007) (quoting *Twombly,* 550 U.S. at 569 n. 14). The Court accepts as true all of plaintiff's well-pleaded facts and all reasonable inferences that can be drawn therefrom. *Ruderman v. Bank of Am., N.A.,* No. 10–cv–6153, 2011 WL 2149630, at *3 (N.D. Ill. June 1, 2011), citing *Barnes v. Briley,* 420 F.3d 673, 677 (7th Cir. 2005).

## ARGUMENT

### I. BATISTE'S PENDENT STATE CLAIM IS TIMELY PURSUANT TO THE RELATION BACK DOCTRINE BECAUSE IT AROSE OUT OF THE CONDUCT, TRANSACTION OR OCCURRENCE SET OUT – OR ATTEMPTED TO BE SET OUT – IN HIS TIMELY SECTION 1983 CLAIM

Defendants' motions to dismiss wrongly contend that Count II of Batiste's Fifth Amended Complaint is time-barred. Defendants also incorrectly frame Count II as a medical negligence claim. The claim specifically alleges negligence and willful and wanton conduct in violation of 725 ILCS 5/103-2(c), which provides that "[p]ersons in custody shall be treated

humanely and provided with proper food, shelter and, if required, medical treatment." The negligence and willful and wanton claim stems from Defendants' deviation from the standard of care specified in the statute. *See Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) ("A conventional principle of tort law, . . . , is that if a statute defines what is due care in some activity, the violation of the statute . . . presumptively establishes that the violator failed to exercise due care."). By failing to provide Batiste with the medical care he needed while in custody (let alone any medical care for three days while Batiste complained of severe and excruciating pain), the nurses and correctional officers who served as his custodians did not treat him humanely. Because Count II is fully supported by the same allegations in Batiste's timely filed complaints, it relates back in time to those complaints pursuant to Rule 15(c) and is not time-barred.[1]

The Tort Immunity Act provides that, "Illinois . . . governmental entities and their employees . . . benefit from a one-year statute of limitations for 'civil actions' against them." *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005); *see* 745 ILCS 10/8-101(a).[2] The Illinois statute applies, even when the state law claims are joined with a Section 1983 claim. Thus, "[w]hile the two-year period . . . applies to Section 1983 claims, . . . the one-year period applies to state-law claims that are joined with a Section 1983 claim." *Id.* (internal citations omitted). Pursuant to Federal Rule 15(c), however, an amendment to the original complaint may relate back to the date of the original pleading. "[T]o benefit from . . . [the] 'relation back' doctrine, the original complaint must have been timely filed." *Id.* Here, Batiste's original complaint was timely filed.

_____

[1] The same relation back analysis applies if the Court determines that Count II is a medical negligence claim.

[2] The statute provides an exception for claims "arising out of patient care," which is addressed later. *See* 745 ILCS 10/8-101(b).

The one-year period of limitations for Batiste's state law claim expired February 19, 2011, when he was released from the hospital. Batiste filed his original complaint on June 4, 2010 and the latest amendment to his complaint on October 14, 2010. Batiste's original complaint and four amendments were, therefore, comfortably filed within the limitations period. And Defendants do not contest the timeliness of Batiste's Section 1983 claim. Because Batiste filed his Fifth Amended Complaint on April 29, 2011, his pendent state law claim survives if it relates back to his timely filed complaints pursuant to Federal Rule 15(c)(1)(B).

An amendment to a complaint that introduces a new claim "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "[R]elation back is permitted . . . where an amended complaint asserts a new claim on the basis of the same core of fact, but involving a different substantive legal theory than that advanced in the original pleading." *Bularz v. Prudential Ins. Co. of Am.,* 93 F.3d 372, 379 (7th Cir. 1996); *see also Luckett v. Conlan,* 561 F. Supp. 2d 970, 975 (N.D. Ill. 2008) ("Rule 15(c)(1)(B) allows an amendment to relate back to the original pleading when the amendment asserts a new claim based on the same core of facts alleged in the original pleading, but involves a new legal theory."). A party that adds a new substantive claim to his action need only ensure that "the new claim stems from the same 'conduct, transaction, or occurrence' as was alleged in the original complaint . . . [and] there is no additional requirement." *Bularz,* 93 F.3d at 379.

In his Fourth Amended Complaint, Batiste alleged facts that formed the basis of his Section 1983 claim. He alleged that on February 2, 2010, he was informed that his "blood levels were non-therapeutic" from his known blood disorder, Protein-C deficiency which causes blood clots. (Dkt. 27, at ¶ 4). He was prescribed medication "to be taken over a three day period as a

treatment plan." *Id*. He stated that "[t]he medication was administered to [him] by the nursing staff . . . [from] February 3, 2010 thru February 6, 2010[ ]." *Id*. at ¶ 5. During that three day period, Batiste alleged that he complained "about being in extreme pain. [. . .] [but that] he was disregarded and brushed off by [the nurses] Ms. Pennington and Ms. Cynthia Jones." *Id*. He alleged that "it was not until February 6, 2010 that "Correctional Officer McNutt finally sent [him] to the dispensary at or about 11:30pm." *Id*. Batiste stated that he was hospitalized and "continued to experience extreme pain" until his release on February 19, 2010. He alleged that the hospital found that "improper medical attention caused [his] serious injury." *Id*.

The very same facts alleged in Batiste's Fourth Amended Complaint now form the basis of his pendent state claim in the Fifth Amended Complaint. The state claim alleges that, by failing to provide the humane treatment required by 725 ILCS 5/103-2(c), Defendants acted with negligence and willful and wanton conduct. The facts supporting Batiste's new claim are identical to those asserted in his Section 1983 claim. Batiste alleges in Count II of his Fifth Amended Complaint that he was not provided medical treatment for more than three days, despite his complaints of pain. Batiste also alleges that he was not taken to a hospital, despite repeated complaints of pain, and that medical help provided was untimely and inadequate. These allegations closely resemble those in Batiste's Fourth Amended Complaint. Federal Rule 15(c)(1)(B) only requires that the new claim asserted arise "out of the conduct, transaction or occurrence set out – *or attempted to be set out* – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B) (emphasis added). Batiste certainly, at the very least, attempted to set out the very same set of facts that form the basis of his state law claim in the complaints that he filed *pro se*. Moreover, the new pendent state claim alleged in Count II of the Fifth Amended Complaint arises out of the very same incident already described in the original complaint. As a result, the relation back doctrine pursuant to Rule 15(c)(1)(B) applies to Batiste's pendent state claim and it

is not time-barred. *See e.g., Bularz,* 93 F.3d at 379; *Luckett,* 561 F. Supp. 2d at 975; *United States v. Omnicare, Inc.,* No. 07 C 5777, 2011 WL 1059148 at *6 (N.D. Ill. Mar. 21, 2011).

## II. THE "ARISING OUT OF PATIENT CARE" EXCEPTION TO THE TORT IMMUNITY ACT APPLIES TO BATISTE'S STATE CLAIM AND BENEFITS FROM AN EXTENDED LIMITATIONS PERIOD

Although Section 10/8-101(a) of the Tort Immunity Act provides a limitations period of one year, it also refers to an exception contained in subsection (b) that states the following:

> No action for damages for injury or death against any local public entity or public employee, whether based upon tort or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or . . . should have known . . . of the existence of the injury . . . for which damages are sought in the action.

745 ILCS 10/8-101(b).

If the Court determines that the state claim in Count II of Batiste's Fifth Amended Complaint does not relate back, the exception in the statute that provides a two-year limitations period for claims "arising out of patient care" applies to this case.

Batiste agrees with Defendants' assertion that the "arising out of patient care" language in 745 ILCS 10/8-101(b) should be interpreted the same as the identical language in 735 ILCS 5/13-212(a) of the Code of Civil Procedure.[3] Batiste disagrees, however, with Defendants' reading of the statutes. The Illinois Supreme Court has determined that the "arising out of patient care" language "[i]s to be construed broadly." *Kaufmann v. Schroeder,* 946 N.E.2d 345, 349 (Ill. 2011). "While the phrase does not . . . encompass 'but for' causation, it clearly covers any injuries that have their origin in, or are incidental to, a patient's medical care and treatment."

---

[3] Section 13-212(a) of the Code of Civil Procedure provides that "no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, *arising out of patient care,* shall be brought more than 2 years after the date on which the claimant knew, or . . . should have known . . . of the existence of the injury . . . for which damages are sought in the action." 735 ILCS 5/13-212(a) (emphasis added).

*Brucker v. Mercola*, 886 N.E.2d 306, 318-19 (Ill. 2007). Most importantly, the Illinois Supreme Court stated, "it is obvious that the term 'patient care' is itself broad, encompassing the entire scope of a person's medical care and treatment." *Id.*

Pursuant to 725 ILCS 5/103-2(c) "[p]ersons in custody shall be treated humanely and provided with proper food, shelter and, if required, medical treatment." Defendants were responsible for Batiste's care as a pre-trial detainee. Defendants contend that because they failed to provide Batiste with access to medical care, his injuries could not have "arisen out of patient care" that he did not receive. Batiste alleges, however, that Defendants Pennington and Jones provided him with medical care by administering blood-clotting medication (Coumadin) that he was prescribed. Not long after Defendants Pennington and Jones administered Batiste's blood-clotting medication, Batiste expressed to Defendants (who were the nurses and correctional officers tending to him at the time) that he was in excruciating pain. They disregarded him and allowed his condition to remain untreated until the pain had escalated such that he was unable to get out of the bed in his cell. Particularly because all Defendants were well apprised of Batiste's abnormal blood clotting condition, Defendants' failure to promptly treat Batiste fits squarely within "the entire scope of [his] medical care and treatment" with which Defendants were charged. *Brucker*, 886 N.E.2d at 318-19.

Defendants seek to draw a distinction between medical malpractice and negligence, stating that the legislative history suggests that Section 10/8-101(b) only applies to malpractice claims involving care or treatment affirmatively provided.[4] Concerning Section 13-212(b), the Illinois Supreme Court has stated that "there is no need to consider whether plaintiffs' claim is

---

[4] The statute was enacted to ensure that individuals treated in public facilities were entitled to the same time two-year limitations period as those treated in private facilities. *See Kaufmann*, 946 N.E.2d at 349 ("[B]y adding subsection (b), a person who suffers injuries arising out of patient care would not be disadvantaged by a shortened limitations period simply because he . . . obtain[ed] treatment at a public facility rather than a private one."); *see also* Defs. Hart, *et. al.*, Ex. 1 at 3-4.

one for ordinary negligence or medical malpractice. Both actions are covered by section 13-212(b) if the injury arose out of patient care." *Brucker* 886 N.E.2d at 323-24; *see also Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1006, 1007 (Ill. 2007) ("Nowhere does [735 ILCS 5/13-212(a)] mention the word[ ] 'malpractice.' [. . .] The question [of whether the statute applies] is not whether the plaintiff has alleged medical negligence or ordinary negligence. Rather, the sole issue is whether the plaintiff's claim arose from patient care."). Even if there is a critical difference between allegations of medical malpractice and negligence, the cases Defendants cite do not foreclose the possibility that the statute of limitations provided in Section 10/8-101(b) applies to negligence claims alleging a failure to act when providing medical care. *See Kaufmann*, 946 N.E.2d at 348-49; *Brucker*, 886 N.E.2d at 313-15. Relevant to the specific facts of this case is the Illinois Supreme Court's decision in *Orlak*.

The plaintiff in *Orlak* was hospitalized in 1989 and received a blood transfusion while unconscious. Her mother signed a consent form for the transfusion which stated in relevant part that there was no known test for determining the existence or non-existence of viral hepatitis in the blood. In August 2000, Loyola notified plaintiff by letter that she should be tested for the Heptitis C virus (HCV), because her donor had recently tested positive for the virus. Plaintiff alleged in her complaint that in 1996, the Food and Drug Administration advised hospitals to notify patients who received blood transfusions prior to 1992 to be tested for the presence of HCV. Plaintiff's allegations included medical negligence and ordinary negligence. Loyola claimed that plaintiff's claims were barred by 735 ILCS 5/13-212(a)'s two-year limitations period. Plaintiff contended that "Loyola's failure to notify her . . . [was an] omission [that] did not involve the provision of medical care." *Orlak*, 885 N.E.2d at 1008. The court stated, however, that "the omission itself cannot be viewed in a vacuum." *Id.*

The court noted that the phrase "'arising out of patient care' simply requires a causal

connection between the patient's medical care and the alleged injury." *Id.* It reasoned that the duty that plaintiff alleged and "Loyola's violation of that duty flows from the blood transfusion she received during her 1989 hospitalization." *Id.* The court concluded "[i]t is apparent . . . that there is a causal connection between plaintiff's 1989 hospitalization and blood transfusion and her . . . claim against Loyola. Accordingly, her claim ar[ose] out of patient care." *Id.* Similarly, in this case, although Batiste's injuries arise from Defendants' omission or failure to act, his allegations and injuries causally flow from the care he received from the nurses and correctional officers who were charged with tending to him. As previously explained, Defendants Pennington and Jones provided Batiste with medication, and Defendants served as his only means to access medical treatment. By ignoring Batiste's pleas for medical attention, Defendants caused his injuries. Thus, Batiste's claims "arise out of patient care" and fall within the two-year statute limitations period.[5]

Defendants Dart and McNutt also contend that, as employees of Cook County Sherriff's Office, they are not charged with the medical treatment or care of pre-trial detainees in their job descriptions. Pursuant to 725 ILCS 5/103-2(c), however, Dart and McNutt are charged with "treat[ing] [Batiste] humanely and provid[ing] [Batiste] with proper . . . medical treatment." *See* 725 ILCS 5/103-2(c). Indeed, the enactment of 754 ILCS 10/8-101(b) was designed to allow the indigent (e.g., pre-trial detainees) the benefit of the two-year limitations period when they are required to entrust their medical needs to government facilities. *See generally*, Defs.' Hart, *et. al.*, Ex. 1.

---

[5] Defendants may cite to *Bailey v. City of Chicago*, No. 08 C 4441, 2009 WL 1285814 (N.D. Ill. May 5, 2009), in support of their argument. This case, however, is not binding on this Court. Additionally, *Bailey* does not set forth the reasoning or analysis as to why it held that the one-year statute of limitations applied. Put simply, *Bailey* provides this Court with little guidance, and what guidance it provides is non-binding.

III.  BATISTE IS NOT REQUIRED TO FILE AN EXPERT AFFIDAVIT WITH HIS
COMPLAINT PURSUANT TO SECTION 2-622 OF THE ILLINOIS CODE OF CIVIL
PROCEDURE BECAUSE HIS CLAIMS CAN BE READILY UNDERSTOOD BY A
COMMON LAY PERSON AND DEFENDANTS' ACTIONS WERE GROSSLY NEGLIGENT

Section 2-622(a) of the Code of Civil Procedure provides that "in any action . . . in which
the plaintiff seeks damages for injuries . . . by reason of medical . . . or other healing art
malpractice, the . . . plaintiff . . . shall file an [expert] affidavit." 735 ILCS 5/2-622(a).  Courts
"consider three factors in determining whether a complaint sounds in malpractice for purposes of
the certification of merit requirement:  (1) whether the applicable standard of care involved
procedures not within the grasp of the ordinary lay juror; (2) whether the activity alleged was
inherently one involving medical judgment; and (3) the type of evidence necessary to establish
plaintiff's claim." *Warren v. Dart*, No. 09 C 3512, 2010 WL 4883923, at \*11 (N.D. Ill. 2010);
*see also Jackson v. Chicago Classic Janitorial & Cleaning Serv., Inc.*, 823 N.E.2d 1055 (Ill.
App. Ct. 2005).  In its discussion of the third factor, *Jackson* acknowledged that "unless
defendant's conduct is so grossly negligent or the treatment so common that a lay person could
readily understand it" a plaintiff "must offer expert testimony to establish the standard of care" in
a medical malpractice case. *Jackson*, 823 N.E.2d at 1060.

Batiste in this case alleges that he was not provided treatment for excruciating pain, even
after repeated complaints to Defendants.  Experiencing pain is familiar to, and very common
among, lay persons.  The common treatment for people who are in pain is some form of pain
medication.  Moreover, the standard of care required in this case is simply humane treatment
and, if required, the provision of medical treatment. *See* 725 ILCS 5/103-2(c).  Although the
Court may construe Batiste's claim as one of is medical malpractice under Section 2-622(a), the
appropriate treatment for his condition is so common and Defendants' conduct was so grossly
negligent that no expert testimony is needed to establish the standard of care that was violated.

In a prior case, this Court determined that medical malpractice claims against "nurse [d]efendants [are] held to a standard of care that applies distinctively medical knowledge or principle." *Warren*, 2010 WL 4883923, at 12. As a result, it determined that claims against nurse defendants required compliance with Section 2-622(a)'s expert affidavit requirement. Batiste's facts are distinguishable from that case, however. *Warren* concerned a detainee with a history of asthma and cardiac thrombosis, whose asthma inhalers were taken from her during her initial intake at the jail. For days, the detainee "complained repeatedly of shortness of breath, lightheadedness, and chest pains. She vomited several times and was visibly in need of urgent medical attention." *Id.* at *1. The facts in *Warren* required familiarity with cardiac thrombosis, asthma, and the effect of the inhalers and medication required to treat the detainee's medical condition. The medical condition involved in *Warren* was inherently more complex than Batiste's allegations of Defendants' failure to treat his pain. The analysis in *Warren* with respect to the nurse defendants, therefore, does not apply to this case. Rather, the Section 2-622(a) expert affidavit exception provided in *Jackson* for claims involving common medical treatment understood by lay people and grossly negligent conduct applies to the state claim against all Defendants.[6]

Even if the statute applies to the nurse defendants in the action, this Court has determined that "with respect to the non-nurse Defendants, the standard of care is one of ordinary care, not medical expertise. Determining that . . . a failure [to act] amounted to a breach of the ordinary duty of care would not be beyond the ken of an ordinary lay juror." *Id.* at *11. Defendants Dart and McNutt are not nurses with medical expertise and, therefore, are held to an ordinary standard of care. As this Court explained in *Warren*, "[a] failure to provide access to care to someone who was obviously ill does not inherently involve a question of medical judgment, does not turn

---

[6] If the Court concludes that Section 2-622(a) applies to the nurse defendants in this action, then Batiste respectfully requests that the Court afford him the opportunity to file an expert affidavit.

on even basic medical standards or medical knowledge, and does not require the introduction of technical or expert medical evidence." *Id.* Batiste was obviously not feeling well, as he complained incessantly about the pain he suffered. Because Defendants Dart and McNutt did not have to make any medical judgments, expert testimony concerning the actions of these defendants is not required by the statute.

## CONCLUSION

Batiste's state claim relates back to the same underlying conduct, transaction or occurrence set out – or attempted to be set out – in his earlier complaints. Accordingly, and for this reason alone, Defendants' motions to dismiss should be denied. Alternatively, if the Court find that Batiste's state claim does not relate back, then the two year statute of limitations (745 ILCS 10/8-101(b)) applies, and Batiste's state claim is timely. Finally, because Batiste's claim is easily understood by lay persons and Defendants' actions were grossly negligent, Batiste was not required to submit an expert affidavit with his Fifth Amended Complaint. For these reasons, Defendants' motions to dismiss should be denied.

Dated: July 1, 2011                    Respectfully submitted,

                                       **JOHN BATISTE, JR.**


                            By:    /s/ John F. O'Brien III

John F. O'Brien III (Bar I.D. 6290370)
WILLIAMS MONTGOMERY & JOHN LTD.
233 South Wacker Drive
Suite 6100
Chicago, Illinois 60606
Telephone: (312) 443-3200
Facsimile: (312) 630-8500
E-Mail: jfo@willmont.com

*Counsel for Plaintiff*
28823.P019CU/mw/Doc#980635

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that in accordance with Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF), Plaintiff's **Response in Opposition to Defendants' Motions to Dismiss Count II of Plaintiff's Fifth Amended Complaint** was served electronically pursuant to the District Court's CM/ECF filing system to the below-named individuals on this 1st day of July, 2011.

Shandra Lynn Leary
James C. Pullos
Cook County State's Attorney's Office
50 West Washington Street
500 Daley Center
Chicago, IL 60602
*Counsel for Defendant Thomas J. Dart*


Kevin William Frey
Cook County State's Attorney's Office
69 West Washington Street
Chicago, IL 60602
*Counsel for Defendants Dr. Avery Hart, Cynthia Jones, and Marilyn A. Pennington*


/s/ John F. O'Brien III